**Hyderally & Associates, P.C.**
TY HYDERALLY, ESQ. (NJSBA 85013) **(ID#023231993)**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
E: TYH@EMPLOYMENTLIT.COM

Attorneys for Plaintiff: Renee Wagar

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RENEE WAGAR,**<br><br>**PLAINTIFF,**<br><br>VS.<br><br>**BARD COLLEGE, JOHN DOES 1-10, and XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | CIVIL ACTION No: |

Plaintiff, Renee Wagar ("Wagar" or "Plaintiff"), who resides at 102 Yantz Road, Red Hook, NY 12571, by way of this Complaint against the Defendant, Bard College ("Bard" or "Defendant"), with their principal place of business located at 30 Campus Road, Annandale-on-Hudson, NY 12504 ("Defendant"), hereby says:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) The Americans with Disabilities Act of 1990 ("ADA"), United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* (disability discrimination); (2) The Americans with Disabilities Act of 1990 ("ADA"), United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* (retaliation); (3) a violation of the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law

1

§ 290 *et seq.* and N.Y.C. Admin. Code § 8-101 *et seq.* (disability discrimination/harassment); (4) a violation of the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law § 296(e) and N.Y.C. Admin. Code § 8-107(7) (retaliation).

2. Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as Plaintiff's Complaint asserts claims under 42 U.S.C. § 12101 *et seq*. Supplemental jurisdiction is asserted over Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is appropriate in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in the Southern District of New York, and the Defendants in this matter are entities or organizations in the State of New York and acting in their individual and official capacities under color of New York law.

4. Plaintiff has complied with all pre-suit requirements and received a Right to Sue Notice from the EEOC dated July 29, 2019. (Exhibit "A").

## II. Parties

5. Wagar was an Environmental Specialist for Bard College, which is located at 30 Campus Road, Annandale-on-Hudson, NY 12504.

6. Plaintiff was an employee of the Defendant Corporation and performed job related duties in the State of New York.

7. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

8. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the

parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

9. Thus, all Defendants are subject to suit under the statutes alleged above.
10. At all times referred to in this Complaint, employees of the corporate Defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate Defendants ratified, embraced and added to their conduct.

### III.  Factual Allegations

11. From approximately September 2011 to the end of February 2013, Wagar worked for Aramark Corporation as a Housekeeper.  In March 2013, Bard took over the services previously contracted to Aramark, and continued Wagar's employment duties.
12. Wagar continued to perform the duties as a Housekeeper, despite Bard changing the title to Environmental Specialist.
13. Wagar's job duties included, among others, collecting garbage and recycled items from dormitory common areas and bathrooms and transporting such garbage and recyclables in large bins to the outside sidewalk, cleaning bathrooms (showers, sinks, toilets, floors, mirrors), furniture (coffee tables, chairs, desks), windows and window sills, large kitchen (floors, appliances inside and out, countertops, windows and screens), laundry room, including all machines inside and out, and floors. Wagar also vacuumed hallways, stairwells and common areas, including cushions of couches.
14. Wagar performed her duties in an exemplary manner and demonstrated dedication and responsibility to her duties, with impeccable attendance and excellent work relationships.
15. On or about September 13, 2018, Wagar commenced a leave of absence under the Family and Medical Leave Act ("FMLA") related to required surgery on her right shoulder to repair a rotator cuff with a return date of December 5, 2018.
16. Wagar had surgery on her shoulder on September 14, 2018, at Dutchess Orthopedic Associates in Poughkeepsie, NY performed by Dr. Stephen Mauer ("Dr. Mauer").
17. During the period of her FMLA leave, Wagar advised Defendants periodically, by email, telephone and in person, of her medical status and progress.

18. On December 3, 2018, Wagar informed Debra Delanoy ("Delanoy"), Assistant Director of Human Resources/Benefits Manager, that Wagar had a medical appointment on January 4, 2019 and thus, would not be able to return from leave on December 5, 2018. (Exhibit "1")
19. On December 6, 2018, Wagar requested short term disability leave to Eugenia Griffin ("Griffin"), Disability Case Manager II for Anthem Life & Disability Insurance Company ("Anthem").
20. On December 12, 2018, Griffin advised Wagar that her disability claim was extended through January 20, 2019. (Exhibit "2")
21. On or about January 10, 2019, Wagar met with Delanoy to discuss Wagar's return to work in the presence of union representatives Thomas Harvey ("Harvey") and Robert Stickle ("Stickle").
22. Delanoy advised Wagar that in order to return to work, her doctor had to complete the required Fit for Duty form ("FFD"), previously provided.
23. At that meeting, Wagar requested the accommodations of working at other buildings on a different shift and/or a part-time schedule, so that Wagar could return to work in a limited capacity.
24. Delanoy responded that she had to discuss the matter with Kimberly Alexander ("Alexander"), Director of Human Resources.
25. Neither Delanoy or Alexander got back to Wagar regarding her request for accommodations.
26. On January 20, 2019, Wagar requested, in an email to Delanoy and Alexander, Director of Human Resources, the accommodation to temporarily work on a part-time basis. Neither Delanoy nor Alexander responded to Wagar's request. (Exhibit "3")
27. The following day, Dr. Mauer faxed the FFD to Delanoy indicating that Wagar could return to work with accommodations. (Exhibit "4")
28. On January 22, 2019, Delanoy returned the FFD to Dr. Mauer indicating that some portions were not legible and requesting that he resubmit the FFD indicating Wagar's restrictions and clearance to return to work. (Exhibit "5")
29. On January 23, 2019, Wagar advised her supervisor, Mike Bemis ("Bemis"), Environmental Services Department Manager, that she missed working and wanted to return to work. (Exhibit "6")

30. Since Wagar had not heard back from Defendants regarding her return to work, she emailed Bemis on January 29, 2019, calling out sick and requesting the accommodation of working five (5) hours of work a day at any location, including her assigned dormitory. (Exhibit "7")

31. Bemis responded the same day, advising Wagar that she didn't need to call out and that Human Resources was handling her disability claim and will make the decision regarding her return to work. (Exhibit "8")

32. On January 30, 2019, Dr. Mauer filled out the FFD again and faxed it to Delanoy requesting accommodations for Wagar. (Exhibit "9")

33. Defendants never contacted Wagar to discuss the contents of the FFD.

34. Instead Defendants merely sent Wagar a letter, dated January 31, 2019, informing her that she was terminated. (Exhibit "10")

35. Prior to terminating Wagar, Defendants failed to engage in an interactive process with her and Defendants failed to offer Wagar any reasonable accommodations so that she could return to work.

36. On February 1, 2019, Wagar asked Delanoy, Griffin and Anthem Disability Department to extend her short-term disability to March 15, 2019. (Exhibit "11")

37. Delanoy responded to Wagar on February 4, 2019 that there were no forms to request a leave of absence and to contact her union representative. (Exhibit "12")

38. On February 22, 2019, Dr. Mauer filled out another revised FFD.

39. The revised FFD noted that although Wagar still had some limitations due to her disability, she could perform the essential functions of her job.

40. This revised FFD was sent to Defendants and requested that Wagar return to work immediately. (Exhibit "13")

41. On that same day, Wagar asked Delanoy if she could return to work the following week. (Exhibit "14")

42. Despite that Wagar was cleared to work by her doctor, Defendant continued to impede her return with Delanoy writing to Dr. Mauer requesting further verification of fitness for duty. (Exhibit "15").

43. On February 28, 2019, Dr. Mauer faxed a letter to Defendant re-confirming that Wagar could return to work immediately. Dr. Mauer correctly noted that Wagar could absolutely

return to work and perform her actual job duties. Dr. Mauer noted that the written job description contained duties or requirements that were things that Environmental Specialists did not do. (Exhibit "16").

44. With regard to all of the things that Environmental Specialists actually did, Mauer noted that Wagar could perform all of these functions.

45. Thus, even though Wagar still had restrictions due to her disability, she could perform all of the essential functions of her job.

46. Despite the clearance from her doctor, Defendants still refused to allow Wagar to return to work.

47. Wagar wrote to Delaroy and Alexander on March 15, 2019, and noted that Defendants continued to violate her rights by their actions and their continued refusal to allow Wagar to return to work.

48. Despite Plaintiff's attempts, Defendants maintained their refusal to allow Wagar to return to work.

49. Further, Defendants failed to engage Wagar in an interactive process to discuss her medical condition, accommodations needed, her ability to return to work, and/or her ability to fulfill the essential functions of her job.

50. Defendants also failed to provide any accommodation so that Wagar could return to work.

51. Defendants' actions are contrary to the law and in retaliation because Wagar took a FMLA leave and because she suffered from a disability.

52. At the time of her termination, on January 31, 2019, Wagar's rate of pay was $17.60 per hour and her benefits included dental, Employee Assistance Program (EAP), life insurance, long term disability, medical/vision/prescription, short term disability, TIAA retirement, workers' compensation, vacation, personal days, holidays, bereavement leave and jury duty. These benefits of employment make up Wagar's claim for damages.

53. Defendant's actions resulted in physical and emotional injuries to Wagar both during her employment and following her employment.

**FIRST CLAIM FOR RELIEF**
**(The Americans with Disabilities Act of 1990 ("ADA")**
**United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Disability Discrimination)**

54. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

55. The foregoing facts and circumstances demonstrate that Defendants has violated the ADA, by discriminating against Plaintiff due to her disability, by failing to accommodate Plaintiff, and/or by failing to engage in an interactive dialogue with Plaintiff.

56. As a direct and proximate result of Defendant's actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

57. Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**SECOND CLAIM FOR RELIEF**
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Retaliation)**

58. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

59. The foregoing facts and circumstances demonstrate that Defendant has violated the ADA, by engaging in acts of reprisal and/or retaliation because Plaintiff asserted her rights under the ADA, because Plaintiff complained of disability discrimination/harassment and/or retaliation. and/or Defendants retaliated against Plaintiff for engaging in protected activity.

60. As a direct and proximate result of Defendant's actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical

injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

61. Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Disability Discrimination/Harassment)**

62. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

63. The foregoing facts and circumstances demonstrate that Defendant has violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and Plaintiff due to her medical condition/disability/handicap, by failing to accommodate Plaintiff, and/or by failing to engage in an interactive dialogue with Plaintiff.

64. As a direct and proximate result of Defendant's actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### FOURTH CLAIM FOR RELIEF
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Retaliation)**

65. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

66. The foregoing facts and circumstances demonstrate that Defendant has violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering

from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment. Further, Defendants retaliated against Plaintiff for engaging in protected activity.

67. As a direct and proximate result of Defendant's actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

68. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against Defendant, as follows:

- A. Compensatory damages;
- B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);
- C. Damages for humiliation, mental and emotional distress;
- D. Statutory damages, if applicable;
- E. Punitive damages and or liquidated damages where permitted by law;
- F. Attorneys' fees and costs of suit;
- G. Lawful interest - including pre-judgment interest on lost wages;
- H. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and
- I. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:    July 30, 2019

                                                                            HYDERALLY & ASSOCIATES, P.C.
                                                                            *Attorneys for Plaintiff*

                                                                            **TY HYDERALLY, Esq.**
                                                                            *For the Firm*

T:\Wagar Renee\Pleadings\073019.COM.docx